UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BIOSCIENCE ADVISORS, INC., <br><br>    Plaintiff, <br><br>v. <br><br>UNITED STATES SECURITIES AND EXCHANGE COMMISSION, et al., <br><br>    Defendants. | Case No. 21-cv-00866-HSG <br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS** <br><br>Re: Dkt. No. 33 |

Now before the Court is a Motion to Dismiss filed by Defendants United States Securities and Exchange Commission; Gary Gensler, in his official capacity as Chair of the Securities and Exchange Commission; National Archives and Records Administration; and David S. Ferriero, in his official capacity as the Archivist of the United States, for which briefing is now complete. *See* Dkt. Nos. 33 ("Mot."), 35 ("Opp."), 37 ("Reply"). For the reasons detailed below, the Court GRANTS IN PART and DENIES IN PART the motion.[1]

## I.  BACKGROUND

This case involves two Administrative Procedure Act ("APA") claims challenging the National Archives and Records Administration's ("NARA") approval and the Securities and Exchange Commission's ("SEC") adoption of a records disposition schedule providing for the disposition of certain temporary records three years after the entry of a confidential treatment order. The remaining two causes of action allege the destruction of records in violation of the Federal Records Act and the denial of requested documents under the Freedom of Information Act ("FOIA").

---

[1] The Court finds the motion appropriate for disposition without oral argument and deems the motion submitted. *See* Civil L.R. 7-1(b).

### A. Statutory Background

#### i. The Federal Records Act

"The Federal Records Act is a collection of statutes governing the creation, management, and disposal of records by federal agencies." *Pub. Citizen v. Carlin*, 184 F.3d 900, 902 (D.C. Cir. 1999) (citing 44 U.S.C. §§ 2101-18, 2901-09, 3101-07, 3301-24). The Act requires that federal agencies "make and preserve records containing adequate and proper documentation of the organization, functions, policies, decisions, procedures, and essential transactions of the agency . . . to protect the legal and financial rights of the Government and of persons directly affected by the agency's activities." 44 U.S.C. § 3101. "The Federal Records Act entrusts the Archivist, who is the head of NARA, to provide 'guidance and assistance to Federal agencies' to ensure that such federal records are properly preserved." *Citizens for Resp. & Ethics in Washington v. Nat'l Archives & Recs. Admin.*, 2021 WL 950142, at *1 (D.D.C. Mar. 12, 2021) ("*Crew II*") (quoting 44 U.S.C. § 2904(a)).

"The Archivist works cooperatively with federal agencies to determine which records an agency must preserve in the archives and which records may be segregated and disposed because of their 'temporary value.'" *Id.* (quoting 44 U.S.C. § 3102(3)). "Agency heads request 'disposition authority'—permission to discard records—from the Archivist and submit to the Archivist plans to dispose of records that are no longer 'needed by [the agency] in the transaction of its current business and that do not appear to have sufficient administrative, legal, research, or other value to warrant their further preservation.'" *Id.* (quoting 44 U.S.C. § 3303(2)). These plans can include "schedules proposing the disposal" of records that lose their "administrative, legal, research, or other value" over time and do not qualify for permanent retention. 44 U.S.C. § 3303(3). After preparing a proposed schedule, the agency head then submits the schedule to the Archivist for approval. 36 C.F.R. §§ 1220.12, 1225.12(i). The Archivist "examine[s] the lists and schedules" and, following a public notice and comment period, determines if any of the records "have sufficient, administrative, legal, research, or other value to warrant their continued preservation" "after the lapse of the period specified." 44 U.S.C. § 3303a(a). If the answer is no, the Archivist may then empower the requesting agency to dispose of the records in accordance

2

with the proposed schedule. *Id.* § 3303a(a)(1)-(2).

In addition to the use and approval of records schedules, the Federal Records Act also "sets forth a structure whereby the Archivist and agency heads are to work together to ensure that documents are not unlawfully destroyed." *Citizens for Resp. & Ethics in Washington v. U.S. S.E.C.*, 916 F.Supp.2d 141, 145 (D.D.C. 2013) ("*Crew I*"). For example, each agency head:

> shall notify the Archivist of any actual, impending, or threatened unlawful removal, defacing, alteration, corruption, deletion, erasure, or other destruction of records in the custody of the agency, and with the assistance of the Archivist shall initiate action through the Attorney General for the recovery of records the head of the Federal agency knows or has reason to believe have been unlawfully removed from that agency, or from another Federal agency whose records have been transferred to the legal custody of that Federal agency.

44 U.S.C. § 3106(a). If the agency head does not initiate such an action, the Archivist "shall request the Attorney General to initiate such action, and shall notify the Congress when such a request has been made." *Id.* § 3106(b).

### ii. The Freedom of Information Act

Under FOIA, each agency is required to make public various records upon request, subject to certain exceptions. 5 U.S.C. § 552. If an agency improperly withholds agency records in response to a FOIA request, the party making the request may ask the district court to "to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant." *Id.* § 552(a)(4)(B).

## B. SEC's 2019 Amendment and 2020 Records Disposition Schedule

### i. The 2019 Amendment

In April 2019, the SEC amended the disclosure requirements set out in Regulation S-K for material contracts and other exhibits filed under the Securities Act and the Exchange Act. The amendment (the "2019 Amendment") permitted registrants to self-redact portions of confidential filings if such redactions were "both not material and would likely cause competitive harm to the registrant if publicly disclosed." 17 C.F.R. § 229.601 (version effective January 31, 2022) ("Rule 601"). Previously, the only procedures for obtaining confidential treatment for exhibits filed under the Exchange Act and Securities Act were set out in Exchange Act Rule 24b-2 ("Rule 24b-

3

2") and Securities Act Rule 406 ("Rule 406"), which require registrants to submit a detailed application to the SEC identifying the particular text for which confidential treatment is sought, a statement of the legal grounds for the exemption, and an explanation of why, based on the facts and circumstances of the particular case, disclosure of the information was unnecessary for the protection of investors. *Id.* §§ 240.24b-2(b)(2), 230.406(b)(2). Upon receipt of an application, known as a "confidential treatment request" or "CTR," SEC staff evaluate whether the request appears appropriate and whether to issue comments on the application. *Id.* §§ 240.24b-2(b)(2), 230.406(b)(2).

### ii. The 2020 Schedule

Following the 2019 Amendment, the SEC developed a proposed records disposition schedule for "[m]aterials submitted in support of a request for confidential treatment pursuant to Rules 406 and 24b-2" and submitted the proposal to NARA for appraisal and approval. *See* Records Schedule DAA-0266-2019-0002, *available at* https://www.archives.gov/files/records-mgmt/rcs/schedules/independent-agencies/rg-0266/daa-0266-2019-0002_sf115.pdf.[2] The proposed schedule (the "2020 Schedule") provided that all temporary materials justifying a request for confidential treatment of information (and submitted under Rules 406 or 24b-2) were to be disposed of three years after the entry of a confidential treatment order. *Id.* at 3; *id.* at 6 ("This item covers materials voluntarily submitted by an entity requesting confidential treatment of business information following the optional method of a traditional/legacy confidential treatment request allowed by Rules 406 and 24b-2. This type of submission is no longer required by the Commission but remains as an option for use at the discretion of the registrant at the time of a filing."). On November 25, 2019, a NARA staff appraiser prepared a memorandum evaluating and recommending approval of the SEC's proposed schedule. *See* NARA-19-0018-0003 (the

---

[2] The Court takes notice of the SEC's proposed schedule under the incorporation by reference doctrine because its contents are alleged in the complaint, the complaint "necessarily relies" on the documents, the document's authenticity is uncontested, and the document's relevance is uncontested. *See Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010); *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) ("Even if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim.").

4

"Appraisal"), *available at* https://www.regulations.gov/document/NARA-19-0018-0003.[3]

As background to the record schedule, the Appraisal's "Additional Background Information" section stated in relevant part:

> Records schedule item DAA-0266-2014-0001-0001, Unredacted Exhibits made certain CTR materials filed with the Commission permanent records because by law, they had to be managed and maintained separately in paper form from the related electronically filed Registration Statements. In 2016, the SEC initiated a review of rules found in 17 CFR Chapter II pursuant to Section 610 of the Regulatory Flexibility Act. The review led to changes in SEC regulations which eliminated the requirements for registrants to request confidential treatment of portions of registration submissions. As a result, unredacted exhibits are no longer required to be submitted to the Commission, and item DAA-0266-2014-0001-0001 is rendered obsolete and is superseded by item DAA-0266-2019-0002-0001 of this proposed schedule. The revised regulations continue to allow entities to submit an elective confidential treatment request. If such a request should occur, documents received by the Commission would be authorized for disposal under item DAA-0266-2019-0002-0001

Appraisal at 6. Finally, the Appraisal set out the following "Appraisal Justification":

> \* Previously approved as temporary.
> Confidential Treatment Request (CTR) Supplemental Materials, DAA-0266-2016-0001-0001
> \* Similar records have been approved as temporary.
> Commodity Futures Trading Commission, Petitions for Confidential Treatment of Regulatory Filings, N1-180-00-001 / 313/a

*Id.* at 7.

Less than one month later, on December 18, 2019, NARA published a notice in the Federal Register, inviting public comment on the proposed records schedule. *See* Records Schedules; Availability and Request for Comments, 84 Fed. Reg. 69,395 (Dec. 18, 2019).[4] After publication of the notice, which drew no comments, the Archivist approved the schedule on February 20, 2020. *See* NARA-19-0018 Consolidated Reply for All Schedules in This Notice (No Comments Received), *available at* https://www.regulations.gov/document/NARA-19-0018-0007.[5]

---

[3] The Court takes notice of the Appraisal under the incorporation by reference doctrine. *See Coto Settlement*, 593 F.3d at 1038; *Ritchie*, 342 F.3d at 908.

[4] The Court takes notice of NARA's Federal Register publication under the incorporation by reference doctrine. *See Coto Settlement*, 593 F.3d at 1038; *Ritchie*, 342 F.3d at 908.

[5] The Court takes notice of NARA's approval of the 2020 Schedule under the incorporation by reference doctrine. *See Coto Settlement*, 593 F.3d at 1038; *Ritchie*, 342 F.3d at 908.

### C. Bioscience Advisors, Inc.

Plaintiff Bioscience Advisors, Inc. is a private company that tracks SEC filings submitted with confidential treatment requests (including those submitted under Rules 406, 24b-2, and 601). After the confidential treatment orders expire, Plaintiff requests copies of the unredacted exhibits from the SEC through FOIA requests and incorporates the information they contain into its commercial database of biopharmaceutical industry financial updates, deal announcements, and searchable contracts. According to Plaintiff, in 2020 the SEC began responding to Plaintiff's FOIA requests by stating that the requested filings were unavailable and presumptively subject to the 2020 Schedule.

Plaintiff filed this lawsuit in February 2021. *See* Dkt. No. 1. After Defendants filed a partial motion to dismiss, Dkt. No. 24, the parties stipulated to the filing of an amended complaint that would moot Defendants' motion, Dkt. No. 30, which the Court granted. Dkt. No. 31. In May 2021, Plaintiff filed the operative Complaint.[6] Dkt. No. 32 ("Compl."). Defendants now move to dismiss.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A defendant may move to dismiss a complaint for failing to state a claim upon which relief can be granted under Rule 12(b)(6). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.,* 521 F.3d 1097, 1104 (9th Cir. 2008). To survive a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when a plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

---

[6] The Complaint alleges that after exhausting its administrative appeals, Plaintiff "received notice from the SEC of its 'right to seek judicial review of [the SEC's] determination by filing a complaint' in federal court." Compl. ¶ 46. Defendants do not contest Plaintiff's right to seek judicial review.

6

1    In reviewing the plausibility of a complaint, courts "accept factual allegations in the
2    complaint as true and construe the pleadings in the light most favorable to the nonmoving party."
3    *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  Nonetheless,
4    courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of
5    fact, or unreasonable inferences."  *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir.
6    2008).

**III.   DISCUSSION**

Plaintiff brings four claims.  Plaintiff's first cause of action challenges NARA's approval and the SEC's adoption of the 2020 Schedule as arbitrary and capricious under the APA.  Compl. ¶¶ 47-54.  Plaintiff's second cause of action alleges that NARA's enactment of the 2020 Schedule does not comply with the Federal Records Act.  *Id.* ¶¶ 56-60.  Plaintiff's third cause of action alleges that the Archivist and SEC Chair failed to enforce the Federal Records Act by notifying the Attorney General of the unlawful destruction of documents.  *Id.* ¶¶ 61-66.  Finally, Plaintiff's fourth cause of action alleges that the SEC's failure to provide the records Plaintiff requested violated FOIA.  *Id.* ¶¶ 67-73.  Defendants move to dismiss all claims.  *See generally* Mot.

**A.   "Arbitrary and Capricious" under the APA (Claim One)**

Plaintiff's first cause of action alleges that (1) NARA's approval and (2) the SEC's adoption of the 2020 Schedule were each arbitrary and capricious under the APA.[7]  Compl. ¶¶ 49, 54.

"When presented with a motion to dismiss [an APA claim] for failure to state a claim, the district court may, in appropriate circumstances, reach the merits even in the absence of the administrative record, as when the parties' arguments can be resolved with reference to nothing more than the relevant statute and its legislative history."  *Banner Health v. Sebelius*, 797 F.Supp.2d 97, 112 (D.D.C. 2011).  But "in recognition of the dangers associated with proceeding

---

[7] Plaintiff's opposition brief challenges the SEC's proposal of the 2020 Schedule for the first time in this litigation.  Opp. at 15.  The Court will not consider this contention because it was not alleged in the Complaint.  *McMichael v. Napa Cnty.*, 709 F.2d 1268, 1273 n.4 (9th Cir. 1983) ("Because none of the state law claims were included in the complaint, we need not consider them.").

7

with judicial review 'on the basis of a partial and truncated record' without the consent of the parties, when the arguments raised go to the question of whether the agency has adhered to the standards of decisionmaking required by the APA, the United States Court of Appeals for the District of Columbia Circuit has advised that the 'better practice' is to test the parties' arguments in the context of a motion for summary judgment and with reference to the full administrative record." *Id.* at 112-13 (citing *Marshall Cnty. Health Care Auth. v. Shalala*, 988 F.2d 1221, 1226 n.5 (D.C. Cir. 1993)); *see also Walter O. Boswell Mem'l Hosp. v. Heckler*, 749 F.2d 788, 792 (D.C. Cir. 1984) ("If a court is to review an agency's action fairly, it should have before it neither more nor less information than did the agency when it made its decision."); *Occidental Petroleum Corp. v. Secs. & Exch. Comm'n*, 873 F.2d 325, 338 (D.C. Cir. 1989) ("[I]n order to allow for meaningful judicial review, the agency must produce an administrative record that delineates the path by which it reached its decision.").

Given the allegations, the Court has some doubt as to whether Plaintiff can successfully show that NARA's approval and the SEC's adoption of the 2020 Schedule were arbitrary and capricious. However, pending presentation of the full administrative record, the Court exercises its discretion at this stage "to decline to reach the ultimate question of whether the agency's decisionmaking process was arbitrary or capricious." *Banner Health*, 797 F.Supp.2d at 113 (collecting cases); *see also City of Columbus v. Trump*, 453 F.Supp.3d 770, 796 (D. Md. 2020) ("The Court will require the Secretary [of the Department of Health and Human Services] to produce the administrative record before reaching the merits of these arguments.").

Accordingly, the Court denies Defendants' motion to dismiss Plaintiff's first claim.

**B.     Compliance with the Federal Records Act under the APA (Claim Two)**

Plaintiff's second claim mounts another procedural challenge to the 2020 Schedule, arguing that the Schedule should be set aside as "not in accordance with law [the Federal Records Act]." Compl. ¶¶ 55-60. In particular, Plaintiff argues that NARA's approval of the 2020 Schedule violates the Federal Records Act because it permits the destruction of documents while they still have "objective, quantifiable market value in addition to administrative, legal, and research value, and [] will hold that value for much longer than the three-year retention period in

8

the Policy." *Id.* ¶ 60.  Defendants move to dismiss Plaintiff's claim under Rule 12(b)(6).

For an APA claim to survive a motion to dismiss, Plaintiff must allege facts that could plausibly lead the court to find the contested 2020 Schedule "not in accordance with law' because [it] permit[s] the destruction of record material that should be maintained" under the Federal Records Act.  *Armstrong v. Bush*, 924 F.2d 282, 297 (D.C. Cir. 1991) (quoting 5 U.S.C. § 706(2)(A)).

To determine whether federal records have archival value, NARA has promulgated an "Appraisal Policy" that "sets out the strategic framework, objectives, and guidelines that [it] uses to determine whether Federal records have archival value."  Nat'l Archives & Records Admin., Appraisal Policy of the National Archives § 1 (Sept. 2007), https://www.archives.gov/records-mgmt/scheduling/appraisal#policy ("NARA Appraisal Policy").  As a "beginning point for appraisal," the NARA Appraisal Policy categorizes the evidence it collects into:

> (1) records that document the rights of citizens and enable citizens to establish their identities, protect their rights, and claim their entitlements;
> (2) records that document actions of Federal officials and enable them to explain past decisions, form future policy, and be accountable for consequences; and
> (3) records that document the national experience and provide the means for evaluating the effects of Federal actions on the nation and for understanding its history, science, and culture, including the man-made and natural environment.

*CREW II*, 2021 WL 950142, at *2 (simplified) (quoting NARA Appraisal Policy).

Drawing all reasonable inferences in Plaintiff's favor, as the Court must at this stage, the Court concludes that Plaintiff has plausibly stated a claim for relief.  The Complaint alleges that the records at issue contain information that enables Plaintiff to "provide a database of financial updates, deal announcements, and searchable contracts that was widely referenced by the biopharmaceutical business community," and that "[t]hese exhibits, obtained long after any risk of harm from disclosure had passed, provided valuable insights into the industry for researchers and industry players about the details of deals that had been conducted in past years."  Compl. ¶ 21.  These allegations are sufficient to plausibly contend that the documents at issue have value warranting their continued preservation by the government beyond the 2020 Schedule's three-year

9

retention period.

Defendants seek dismissal because Plaintiff's claim is focused on records with "objective, quantifiable market value." Mot. at 20. Neither the Federal Records Act nor NARA's promulgated appraisal policy, Defendants argue, takes into consideration market or commercial value of federal records. *Id.* at 20-21. Instead, Defendants contend that the focus of documents warranting preservation is "on the preservation of records that serve an important function in documenting the government's actions—not simply any document with 'objective, market value' or even some form of commercial 'research value.'" *Id.* at 20. Defendants further argue that "courts have generally understood this mandate to apply to historical research rather than commercial research—and in particular, historical research related to the government itself." *Id.* at 20-21 ("[T]he unredacted exhibits that are at issue in this case have no bearing on the 'documentary history of the federal government' . . . or any other historical interest." (internal citation omitted)).

At this early stage when no factual record has been presented, the Court is unpersuaded. The SEC is a "a federal agency whose mission is to protect investors nationwide and to regulate the securities markets." *See Morris v. United States Sec. & Exch. Comm'n*, No. 19-CV-887 (APM), 2019 WL 4575607, at *1 (D.D.C. Sept. 20, 2019), *aff'd sub nom. Morris v. Sec. & Exch. Comm'n*, No. 19-5274, 2020 WL 2610606 (D.C. Cir. Apr. 21, 2020); *Nat. Res. Def. Council, Inc. v. Sec. & Exch. Comm'n*, 606 F.2d 1031, 1036 (D.C. Cir. 1979) ("[T]he SEC . . . is, of course, the agency charged with administering the federal statutes mandating disclosure of corporate information."). As Plaintiff suggests, "[p]ractically every element of the SEC's work could be characterized as 'commercial' . . . Virtually all the records created and collected by the SEC have 'commercial value,' and deal with 'commercial' subjects." Opp. at 19. The fact that records have commercial or market value does not categorically exclude them from the reach of the Federal Records Act. The Act does not set out an exclusive list of categories of value warranting preservation, and accounts for this by requiring the Archivist to determine whether documents "have sufficient administrative, legal, research, *or other value*" warranting their continued preservation. 44 U.S.C. § 3303a(a). Thus, even assuming that the records at issue bear no value

outside of their commercial or market value, the Court cannot conclude as a matter of law on a motion to dismiss that the disputed records necessarily fall outside of the protections of the Federal Records Act.

Accordingly, the Court denies Defendants' motion to dismiss Plaintiff's second claim.

### C. Enforcement Action under the APA and the Federal Records Act (Claim Three)

The APA permits private enforcement of the Federal Records Act when a plaintiff seeks judicial review of (1) the adequacy of an agency's recordkeeping guidelines; or (2) the Archivist's and agency head's pursuit of (or failure to pursue) enforcement actions seeking redress for the unlawful removal or destruction of records. *Armstrong*, 924 F.2d at 296; *see also* 44 U.S.C. §§ 2115(b), 3106(a). Plaintiff's third cause of action invokes the latter theory. Compl. ¶¶ 61-66. Defendants seek to dismiss Plaintiff's claim on the grounds that (1) Plaintiff has already obtained all of the allegedly destroyed documents, rendering its claim moot; and (2) the Complaint does not sufficiently plead a claim.

Plaintiff sufficiently states a claim under the Federal Records Act. The Complaint alleges that the "Plaintiff has notified the SEC and NARA repeatedly that SEC staff are destroying (and/or claim to have destroyed) documents that are subject to preservation under the Policy," and that "[n]either the SEC Chair nor the Archivist has initiated an investigation into these violations of the FRA, nor have they invited the Attorney General to initiate an enforcement action." Compl. ¶ 65. These allegations are sufficient at this stage to plead that the Archivist and SEC Chair did not take required action to prevent the unlawful destruction of documents. *Armstrong*, 924 F.2d at 296 n.12 ("[T]he agency head and Archivist are required to take action to prevent the unlawful destruction or removal of records and, if they do not, private litigants may sue under the APA to require them to do so.").

Defendants raise a mootness argument, contending that Plaintiff's claim should be dismissed because Plaintiff has already obtained all of the allegedly destroyed records. Mot. at 22. Instead of initiating the enforcement action that Plaintiff requested under Federal Records Act, the SEC simply returned three documents to Plaintiff – an action which, according to Defendants,

11

1  moots Plaintiff's claim. However, since the Complaint alleges that neither the SEC Chair nor the
2  Archivist have asked the Attorney General for help and Defendants have not shown that such a
3  request could not lead to recovery of additional documents, Plaintiff's claim is not moot. *See Jud.*
4  *Watch, Inc. v. Kerry*, 844 F.3d 952, 953 (D.C. Cir. 2016) (reversing trial court's dismissal of
5  Federal Records Act enforcement proceedings action on mootness grounds); *id.* at 955 ("[T]he
6  [SEC] has not explained why shaking the tree harder—e.g., by following the statutory mandate to
7  seek action by the Attorney General—might not bear more [documents] still.")

Accordingly, the Court denies Defendants' motion to dismiss Plaintiff's third claim.

### D.  Denial of Records under FOIA (Claim Four)

Plaintiff's fourth cause of action alleges that the SEC has improperly denied an unspecified number of FOIA record requests. Compl. ¶¶ 67-73. Defendants seek dismissal of Plaintiff's claim because Plaintiff does not describe any of its FOIA requests "with sufficient detail for Defendants to determine with confidence which requests are being challenged." Mot. at 26.

Construed as a claim under FOIA, Plaintiff's fourth cause of action fails to state a claim for relief. The Complaint details one FOIA denial in support of Plaintiff's claim: "Plaintiff was provided with amendments to contracts wherein the amendments were subject to confidentiality orders coterminous with the original contract, but Plaintiff was denied access to the original contracts." *Id.* ¶ 69. Outside of this single example, Plaintiff does not identify – let alone with sufficiently specific detail – any requests purportedly denied in violation of FOIA. *See Marshall v. Cuomo*, 192 F.3d 473, 485 (4th Cir. 1999) (affirming district court's dismissal of FOIA claim based on its finding that plaintiff "failed to identify the specific documents requested, when they were requested, to whom those requests were directed, or the extent of [agency's] responses"); *Carroll v. Soc. Sec. Admin.*, 2012 WL 1454858, at *2 (D. Md. Apr. 24, 2012) ("Absent a description of the documents sought, as well as details of the refusal to turn over the requested information, it is impossible to determine if [plaintiff] has stated a viable claim.").

Plaintiff counters that "[t]he sheer numerosity of accumulating FOIA violations here makes listing every violative act in a pleading impracticable." Opp. at 21. But Plaintiff's numerosity argument fails to meet Defendants' specificity concerns. It is undisputed that an

action asserting a large number of FOIA violations is permissible. *See Yagman v. Pompeo*, 868 F.3d 1075, 1081 n.6 (9th Cir. 2017) ("Indeed, the statute itself puts no restrictions on the quantity of records that may be sought. Rather, it explicitly contemplates unusually large requests, affording reviewing agencies additional time to search for a voluminous amount of separate and distinct records which are demanded in a single request." (simplified) (internal citations omitted)).

Accordingly, the Court grants Defendants' motion to dismiss Plaintiff's fourth claim.

## IV. CONCLUSION

The Court **GRANTS IN PART** and **DENIES IN PART** Defendants' motion as follows:

1. Defendants' motion is **DENIED** as to Plaintiff's first cause of action.
2. Defendants' motion is **DENIED** as to Plaintiff's second cause of action.
3. Defendants' motion is **DENIED** as to Plaintiff's third cause of action.
4. Defendants' motion is **GRANTED** as to Plaintiff's fourth cause of action. Because the Court cannot conclude that amendment would be futile, this claim is dismissed with leave to amend. If Plaintiff can cure the pleading deficiencies described above, it must file any amended complaint within 21 days from the date this order is filed.
5. The parties are further **ORDERED** to appear at a case management conference on March 1, 2022 at 2:00 p.m. to discuss setting an expedited summary judgment briefing schedule. The parties will be advised closer to the hearing whether it will take place telephonically or in person. A joint case management conference statement is due by February 22, 2022.

**IT IS SO ORDERED.**

Dated: 2/8/2022

HAYWOOD S. GILLIAM, JR.
United States District Judge

13