UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BIOSCIENCE ADVISORS, INC.,<br><br>    Plaintiff,<br><br>    v.<br><br>UNITED STATES SECURITIES AND EXCHANGE COMMISSION, et al.,<br><br>    Defendants. | Case No. 21-cv-00866-HSG<br><br>**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S RULE 56(D) MOTION**<br><br>Re: Dkt. No. 60, 62 |

Pending before the Court are Defendants United States Securities and Exchange Commission ("SEC"), Gary Gensler, National Archives and Records Administration ("NARA"), and Debra Steidel Wall's (collectively, "Defendants")[1] Motion for Summary Judgment (*see* Dkt. No. 60 ("Mot.")) and Plaintiff Bioscience Advisors, Inc.'s ("Bioscience" or "Plaintiff") Rule 56(d) Motion. *See* Dkt. No. 62 ("R. 56(d) Mot."). For the reasons articulated below, the Court **GRANTS** Defendant's motion for summary judgment and **DENIES** Plaintiff's Rule 56(d) Motion.[2]

**I.     BACKGROUND**

This case involves two Administrative Procedure Act ("APA") claims challenging the National Archives and Records Administration's ("NARA") approval and the Securities and Exchange Commission's ("SEC") adoption of a records disposition schedule providing for the disposition of certain temporary records three years after the entry of a confidential treatment

---

[1] Defendants Gary Gensler and Debra Steidel Wall are sued in their official capacities as Chair of the SEC and Archivist of the United States, respectively. Under Federal Rule of Civil Procedure 25(d), any ambiguity regarding public officers sued in their official capacity who are then replaced is resolved in favor of automatically substituting the new public officer.

[2] The Court has carefully considered the arguments of the parties in the papers submitted, and finds this matter suitable for resolution without oral argument under Civil Local Rule 7-1(b).

order. The remaining two causes of action allege the destruction of records in violation of the Federal Records Act ("FRA") and the denial of requested documents under the Freedom of Information Act ("FOIA").

### A. Statutory Background

#### 1. The Federal Records Act

"The Federal Records Act is a collection of statutes governing the creation, management, and disposal of records by federal agencies." *Pub. Citizen v. Carlin*, 184 F.3d 900, 902 (D.C. Cir. 1999) (internal citations omitted). The Act requires that federal agencies "make and preserve records containing adequate and proper documentation of the organization, functions, policies, decisions, procedures, and essential transactions of the agency . . . to protect the legal and financial rights of the Government and of persons directly affected by the agency's activities." 44 U.S.C. § 3101. "The Federal Records Act entrusts the Archivist, who is the head of NARA, to provide 'guidance and assistance to Federal agencies' to ensure that such federal records are properly preserved." *Citizens for Resp. & Ethics in Washington v. Nat'l Archives & Recs. Admin.*, 2021 WL 950142, at *1 (D.D.C. Mar. 12, 2021) ("*Crew II*") (internal quotation omitted).

"The Archivist works cooperatively with federal agencies to determine which records an agency must preserve in the archives and which records may be segregated and disposed because of their 'temporary value.'" *Id.* (internal quotation omitted). "Agency heads request 'disposition authority'—permission to discard records—from the Archivist and submit to the Archivist plans to dispose of records that are no longer 'needed by [the agency] in the transaction of its current business and that do not appear to have sufficient administrative, legal, research, or other value to warrant their further preservation.'" *Id.* (internal quotation omitted). These plans can include "schedules proposing the disposal" of records that lose their "administrative, legal, research, or other value" over time and do not qualify for permanent retention. 44 U.S.C. § 3303(3). After preparing a proposed schedule, the agency head then submits the schedule to the Archivist for approval. 36 C.F.R. §§ 1220.12, 1225.12(i). The Archivist "examine[s] the lists and schedules" and, following a public notice and comment period, determines if any of the records "have sufficient, administrative, legal, research, or other value to warrant their continued preservation"

"after the lapse of the period specified." 44 U.S.C. § 3303a(a). If the answer is no, the Archivist may then empower the requesting agency to dispose of the records in accordance with the proposed schedule. *Id.* § 3303a(a)(1)-(2).

In addition to the use and approval of records schedules, the Federal Records Act also "sets forth a structure whereby the Archivist and agency heads are to work together to ensure that documents are not unlawfully destroyed." *Citizens for Resp. & Ethics in Washington v. U.S. S.E.C.*, 916 F.Supp.2d 141, 145 (D.D.C. 2013) ("*Crew I*"). For example, each agency head:

> shall notify the Archivist of any actual, impending, or threatened unlawful removal, defacing, alteration, corruption, deletion, erasure, or other destruction of records in the custody of the agency, and with the assistance of the Archivist shall initiate action through the Attorney General for the recovery of records the head of the Federal agency knows or has reason to believe have been unlawfully removed from that agency, or from another Federal agency whose records have been transferred to the legal custody of that Federal agency.

44 U.S.C. § 3106(a). If the agency head does not initiate such an action, the Archivist "shall request the Attorney General to initiate such action, and shall notify the Congress when such a request has been made." *Id.* § 3106(b).

### 2. The Freedom of Information Act

Under FOIA, each agency is required to make public various records upon request, subject to certain exceptions. 5 U.S.C. § 552. If an agency improperly withholds agency records in response to a FOIA request, the party making the request may ask the district court to "to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant." *Id.* § 552(a)(4)(B).

### B. SEC's 2019 Amendment and 2020 Records Disposition Schedule

#### 1. The 2019 Amendment

In April 2019, the SEC amended the disclosure requirements set out in Regulation S-K for material contracts and other exhibits filed under the Securities Act and the Exchange Act. The amendment (the "2019 Amendment") permitted registrants to self-redact portions of confidential filings if such redactions were "both not material and would likely cause competitive harm to the registrant if publicly disclosed." 17 C.F.R. § 229.601 (version effective January 4, 2021 to March

14, 2021) ("Rule 601"). Previously, the only procedures for obtaining confidential treatment for exhibits filed under the Exchange Act and Securities Act were set out in Exchange Act Rule 24b-2 ("Rule 24b-2") and Securities Act Rule 406 ("Rule 406"), which require registrants to submit a detailed application to the SEC identifying the particular text for which confidential treatment is sought, a statement of the legal grounds for the exemption, and an explanation of why, based on the facts and circumstances of the particular case, disclosure of the information was unnecessary for the protection of investors. *Id.* §§ 240.24b-2(b)(2), 230.406(b)(2). Upon receipt of an application, known as a "confidential treatment request" or "CTR," SEC staff evaluate whether the request appears appropriate and whether to issue comments on the application. *Id.* §§ 240.24b-2(b)(2), 230.406(b)(2).

### 2. The 2020 Schedule

Following the 2019 Amendment, the SEC developed a proposed records disposition schedule for "[m]aterials submitted in support of a request for confidential treatment pursuant to Rules 406 and 24b-2" and submitted the proposal to NARA for appraisal and approval. *See* Records Schedule DAA-0266-2019-0002, *available at* https://www.archives.gov/files/records-mgmt/rcs/schedules/independent-agencies/rg-0266/daa-0266-2019-0002_sf115.pdf. The proposed schedule (the "2020 Schedule") provided that all temporary materials justifying a request for confidential treatment of information (and submitted under Rules 406 or 24b-2) were to be disposed of three years after the entry of a confidential treatment order. *Id.* at 3; *id.* at 6 ("This item covers materials voluntarily submitted by an entity requesting confidential treatment of business information following the optional method of a traditional/legacy confidential treatment request allowed by Rules 406 and 24b-2. This type of submission is no longer required by the Commission but remains as an option for use at the discretion of the registrant at the time of a filing."). On November 25, 2019, a NARA staff appraiser prepared a memorandum evaluating and recommending approval of the SEC's proposed schedule. *See* NARA-19-0018-0003 (the "Appraisal"), *available at* https://www.regulations.gov/document/NARA-19-0018-0003.

As background to the record schedule, the Appraisal's "Additional Background Information" section stated in relevant part:

> Records schedule item DAA-0266-2014-0001-0001, Unredacted Exhibits made certain CTR materials filed with the Commission permanent records because by law, they had to be managed and maintained separately in paper form from the related electronically filed Registration Statements. In 2016, the SEC initiated a review of rules found in 17 CFR Chapter II pursuant to Section 610 of the Regulatory Flexibility Act. The review led to changes in SEC regulations which eliminated the requirements for registrants to request confidential treatment of portions of registration submissions. As a result, unredacted exhibits are no longer required to be submitted to the Commission, and item DAA-0266-2014-0001-0001 is rendered obsolete and is superseded by item DAA-0266-2019-0002-0001 of this proposed schedule. The revised regulations continue to allow entities to submit an elective confidential treatment request. If such a request should occur, documents received by the Commission would be authorized for disposal under item DAA-0266-2019-0002-0001

Appraisal at 6. Finally, the Appraisal set out the following "Appraisal Justification":

> \* Previously approved as temporary.
> Confidential Treatment Request (CTR) Supplemental Materials, DAA-0266-2016-0001-0001
> \* Similar records have been approved as temporary.
> Commodity Futures Trading Commission, Petitions for Confidential Treatment of Regulatory Filings, N1-180-00-001 / 313/a

*Id.* at 7.

Less than one month later, on December 18, 2019, NARA published a notice in the Federal Register, inviting public comment on the proposed records schedule. *See* Records Schedules; Availability and Request for Comments, 84 Fed. Reg. 69,395 (Dec. 18, 2019). After publication of the notice, which drew no comments, the Archivist approved the schedule on February 20, 2020. *See* NARA-19-0018 Consolidated Reply for All Schedules in This Notice (No Comments Received), *available at* https://www.regulations.gov/document/NARA-19-0018-0007.

### C. Bioscience Advisors, Inc.

Plaintiff Bioscience Advisors, Inc. is a private company that tracks SEC filings submitted with confidential treatment requests (including those submitted under Rules 406, 24b-2, and 601). After the confidential treatment orders expire, Plaintiff requests copies of the unredacted exhibits from the SEC through FOIA requests and incorporates the information they contain into its commercial database of biopharmaceutical industry financial updates, deal announcements, and searchable contracts. According to Plaintiff, in 2020 the SEC began responding to Plaintiff's FOIA requests by stating that the requested filings were unavailable and presumptively subject to

the 2020 Schedule.

Plaintiff filed this lawsuit in February 2021. *See* Dkt. No. 1. After Defendants filed a partial motion to dismiss, Dkt. No. 24, the parties stipulated to the filing of an amended complaint that would moot Defendants' motion, Dkt. No. 30, which the Court granted. Dkt. No. 31. In May 2021, Plaintiff filed its First Amended Complaint. Dkt. No. 32 ("FAC"). The Court dismissed the FAC in part on February 8, 2022. *See* Dkt. No. 39. Plaintiff filed its Second Amended Complaint on March 1, 2022. *See* Dkt. No. 43 ("SAC"). Defendants now move for summary judgment.

## II.    LEGAL STANDARD

### A.    Summary Judgment

Summary judgment is proper when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And a dispute is "genuine" if there is evidence in the record sufficient for a reasonable trier of fact to decide in favor of the nonmoving party. *Id.* But in deciding if a dispute is genuine, the Court must view the inferences reasonably drawn from the materials in the record in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986), and may neither weigh the evidence nor make credibility determinations. *See Anderson*, 477 U.S. at 249.

With respect to summary judgment procedure, the moving party always bears both the ultimate burden of persuasion and the initial burden of producing those portions of the pleadings, discovery, and affidavits that show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party will bear the burden of proof on an issue at trial, it must show that no reasonable trier of fact could not find in its favor. *Celotex*, 477 U.S. at 325. "If a moving party fails to carry its initial burden of production, the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial." *Id.* at 1102–03.

"If, however, a moving party carries its burden of production, the nonmoving party must produce evidence to support its claim or defense." *Id.* at 1103. In doing so, the nonmoving party

6

"must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec.*, 475 U.S. at 586. A nonmoving party must also "identify with reasonable particularity the evidence that precludes summary judgment," because the duty of the Court is not to "scour the record in search of a genuine issue of triable fact." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996). If a nonmoving party fails to produce evidence that supports its claim or defense, courts must enter summary judgment in favor of the movant. *Celotex*, 477 U.S. at 323.

**B.     FOIA**

FOIA, 5 U.S.C. § 552, "was enacted to facilitate public access to Government documents." *Lahr v. Nat'l Transp. Safety Bd.*, 569 F.3d 964, 973 (9th Cir. 2009) (internal quotations omitted). The goal of FOIA is to "ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *Id.* (quotation omitted). At the same time, FOIA contemplates that the government may have legitimate reasons for withholding some information from the public. *Id.* Accordingly, FOIA "requires federal agencies to make Government records available to the public, subject to nine exemptions for specific categories of material." *Milner v. Dep't of Navy*, 562 U.S. 562, 564 (2011). These nine FOIA exemptions are "explicitly made exclusive and must be narrowly construed." *Id.* at 565 (quotation omitted).

FOIA cases are typically decided on motions for summary judgment because the facts are rarely in dispute. *See Minier v. Cent. Intelligence Agency*, 88 F.3d 796, 800 (9th Cir. 1996). On a motion for summary judgment, a district court analyzes the withholding of documents *de novo*. 5 U.S.C. § 552(a)(4)(B). FOIA permits a district court to enjoin a defendant agency from withholding agency records or to order a defendant agency to produce any improperly withheld records. *Id.*

A defendant agency "must show that its search for responsive records was adequate, that any claimed exemptions actually apply, and that any reasonably segregable, non-exempt parts of records have been disclosed after redaction of exempt information." *Light v. Dep't of Justice*, 968 F. Supp. 2d 11, 23 (D.D.C. 2013); *accord Lahr*, 569 F.3d at 973; *Pac. Fisheries, Inc. v. United States*, 539 F.3d 1143, 1148 (9th Cir. 2008). The agency bears the burden to show that it has

7

complied with its obligations under FOIA.  5 U.S.C. § 552(a)(4)(B).

## III. DISCUSSION

Defendants submit that they are entitled to summary judgment on Plaintiff's claims because the SEC has complied with its obligations under FOIA, the APA, and the FRA.  In particular, Defendants contend that i) Plaintiff waived the right to argue that the schedule violates the FRA; ii) the schedule is consistent with the FRA; iii) Plaintiff has not shown that NARA's approval of the schedule was arbitrary and capricious; iv) the SEC's adoption of the schedule approved by NARA was reasonable and required by law; v) the SEC Chair did not violate the FRA by failing to address the alleged destruction of records; vi) and the SEC did not violate FOIA.

### A. Plaintiff has Waived the Argument that the Schedule Violates the FRA

As an initial matter, the Court agrees that Plaintiff waived its arguments regarding the adoption of the policy.  Courts generally do not consider a challenge to agency action when raised for the first time in court.  *Exxon Mobil Corp. v. U.S. E.P.A.*, 217 F.3d 1246, 1249 (9th Cir. 2000).  Waiver is excused only in "exceptional circumstances."  *Universal Health Servs., Inc. v. Thompson*, 363 F.3d 1013, 1021 (9th Cir. 2004).

Bioscience had an opportunity to comment regarding the proposed schedule and did not do so.  The record clearly shows that there was a notice-and-comment period beginning on December 18, 2019.  *See* Dkt. No. 59-3, First Administrative R., at 1.  "NARA published notice in the Federal Register" and posted the proposed schedule on regulations.gov.  *Id*. at 3-4.  NARA received no comments on the proposed schedule, and after the Archivist approved it on February 20, 2020, the SEC began destroying documents in accordance with the schedule.  *See id*. at 4.  This means that absent exceptional circumstances Plaintiff cannot now challenge the Agency's adoption of the schedule in this litigation.[3]

---

[3] Plaintiff argues that applying these principles would amount to an "exhaustion doctrine," and contends that doing so would "flout[] the Ninth Circuit's reasoning in *Universal Health*."  Dkt. No. 61 ("Opp.") at 10.  The Court disagrees.  In *Universal Health*, a party failed to comment in the administrative proceeding, and the Ninth Circuit found that the party thus could not raise arguments challenging the administrative action for the first time in court.  The court noted that its holding did not impose an "exhaustion of remedies rule that forecloses judicial review": instead, it "only foreclose[d] *arguments* that may be raised on judicial review."  363 F.3d at 1020 (emphasis

Moreover, Bioscience points to no exceptional circumstances justifying relief from the consequences of its waiver. "In determining whether exceptional circumstances exist, we balance the agency's interests in applying its expertise, correcting its own errors, making a proper record, enjoying appropriate independence of decision and maintaining an administrative process free from deliberate flouting, against the interests of private parties in finding adequate redress for their grievances." *Universal Health*, 363 F.3d at 1021 (internal citation omitted). Here, Plaintiff simply asserts that enforcing *Universal Health*'s waiver rule would leave it without a remedy. But that cannot be a basis for a finding of exceptional circumstances, because it is the direct consequence in every case of having a waiver rule in the first place. Plaintiff's argument that Defendants' position imposes a "de facto exhaustion requirement in contravention of Ninth Circuit law," Opp. at 11, fails to show exceptional circumstances for the same reason described above: there simply is no such requirement, as *Universal Health* confirmed. And *Johnson v. Dir., Off. of Workers' Comp. Programs* does not support any different conclusion, because there the agency (the Benefits Review Board) had changed its own position on the question at issue in a subsequent decision. 183 F.3d 1169, 1171 (9th Cir. 1999). In other words, in those circumstances, the agency had already applied its expertise as to the issue at hand, so there was no risk of "usurping the agency's authority to decide the issue in the first instance[.]" *Id*. But here, without dispute, Plaintiff failed to raise the arguments it now asserts during the notice and comment period at all, depriving the Agency of the opportunity to consider them in the normal administrative process. As such, the Court finds that Plaintiff fails to show any exceptional circumstances that excuse its failure to raise in the administrative process the arguments it now presses on judicial review. *See Universal Health*, 363 F.3d at 1021 ("Given that the hospitals have offered no compelling reason why they did not raise their arguments before the Secretary, we think that there is no basis for finding exceptional circumstances to exist here.").

Accordingly, Bioscience has waived its right to challenge adoption of the schedule, and the

---

added). That is the exact situation presented here: Plaintiff did not have to satisfy any exhaustion requirement to bring a lawsuit, but it has waived any arguments it failed to raise in the notice and comment process. Accordingly, the conclusion that Plaintiff has waived the arguments it asserts in this case is directly driven by, not inconsistent with, *Universal Health*.

Court grants summary judgment in favor of Defendants on Bioscience's first two claims.

### B. Plaintiff's Other FRA Claims Also Fail

#### 1. Alleged Unauthorized Destruction of Records

Plaintiff is correct that the FRA requires the head of a federal agency to "notify the Archivist of any actual, impending, or threatened unlawful removal, defacing, alteration, corruption, deletion, erasure or other destruction of records[.]" 44 U.S.C. § 3106(a). But Plaintiff does not seriously contest that the documents described in the Complaint (at paragraphs 29-31 and 65) were not destroyed, and in fact have been provided to it, as the uncontroverted record confirms. *See* Opp. at 16; Dkt. No. 60-2 (Declaration of Mark Tallarico), ¶¶ 10, 14-15. Mistakenly reporting that the documents were destroyed and then remedying that mistake by providing the requested documents does not amount to unlawful destruction of records. Moreover, Plaintiff's assertion that this position conflicts with prior representations by the SEC is irrelevant. *See id*. In Plaintiff's own words, its "entire point [] is that the SEC is improperly handling its FOIA requests," *id.*, but this broad assertion fails to identify any specific unlawful threatened or actual removal, defacing, alteration, corruption, deletion, erasure, or other destruction of records. Without such a showing, there simply is no issue of fact as to the existence of any harm cognizable under the statute.

#### 2. Actions Required of Defendants Under the FRA

Plaintiff next argues that Defendants are in violation of the FRA because they still have not asked the Attorney General to investigate the alleged unlawful removal or destruction of the documents at issue. *See* SAC ¶ 62. In the Court's February 8, 2022 Order Granting Defendant's Motion to Dismiss in Part (*see* Dkt. No. 39), the Court allowed Plaintiff's third claim to survive because Defendants had argued that the claim should be dismissed on mootness grounds alone. However, the record is now more fully developed, and supports the entry of summary judgment in Defendants' favor. A duty to involve the Attorney General is triggered only when the "agency knows or has reason to believe" the records in question have been *removed* unlawfully. 44 U.S.C. § 3106(a). Plaintiff fails to allege or point to any evidence that Defendants have unlawfully removed any documents, and the statute unambiguously requires that showing. *See Citizens for*

10

*Resp. & Ethics in Washington v. U.S. S.E.C.*, 916 F. Supp. 2d 141, 147 (D.D.C. 2013).  And Plaintiff's reliance on *Armstrong v. Bush* does not help its case, because it has not pointed to anything creating any issue of fact as to whether Defendants were aware of any unlawful removal or destruction of records (given that the uncontroverted record shows that the three specific documents identified by Plaintiff were *not* destroyed).  *See* 924 F.2d 282, 295 (D.C. Cir. 1991) (permitting private enforcement suit where "the agency head or Archivist does nothing while an agency official destroys or removes records in contravention of agency guidelines and directives").  Nothing supports Plaintiff's assertion that the agency knew of any imminent unlawful destruction or removal of records.  Moreover, even if there were any such evidence, when Plaintiff notified the agency of what it believed to be the imminent destruction of records, the agency notified the Archivist, which evaluated the claim and determined it to be "unfounded."  *See* Dkt. No. 59-7, Declaration of Donald Rosen ("Rosen Decl.") ¶¶ 4-10.  Therefore, there is no genuine issue of material fact as to Plaintiff's claim that the Defendants "did nothing," warranting summary judgment in Defendants' favor.

### C. Summary Judgment is Warranted as to Plaintiff's FOIA Claims

"FOIA requires an agency responding to a request to 'demonstrate that it has conducted a search reasonably calculated to uncover all relevant documents.'"  *Lahr v. Nat'l Transp. Safety Bd.*, 569 F.3d 964, 986 (9th Cir. 2009) (quoting *Zemansky v. EPA*, 767 F.2d 569, 571 (9th Cir. 1985)).  "This showing may be made by 'reasonably detailed, nonconclusory affidavits submitted in good faith.'"  *Id.*  "In evaluating the sufficiency of an agency's search, 'the issue to be resolved is not whether there might exist other documents possibly responsive to the request, but rather whether the *search* for those documents was *adequate*.'"  *Id.* (emphases in original).  "To prevail on a motion for summary judgment, the agency must demonstrate 'beyond material doubt . . . that it has conducted a search reasonably calculated to uncover all relevant documents.'"  *Frost v. U.S. Dept. of Justice*, No. 17-CV-01240-JCS, 2018 WL 1626682, at *4 (N.D. Cal. Apr. 4, 2018) (citation omitted).

The Court agrees that Defendants have shown that they conducted an adequate search for

responsive records in response to Plaintiff's FOIA requests.[4] Defendants provide detailed affidavits describing the process by which they searched for the requested records. Affidavits that describe what was searched and by whom are enough to establish an adequate search. *See Lawyers' Comm. for C.R. of San Francisco Bay Area v. U.S. Dep't of the Treasury*, 534 F. Supp. 2d 1126, 1131 (N.D. Cal. 2008). Defendants' affidavits explain who handled Plaintiffs' FOIA requests and how those professionals conduct their searches. *See* Dkt. No. 60-1 (Declaration of Raymond McInerney) at ¶¶ 5-9 (describing steps taken by FOIA Research Specialists), Dkt. No. 60-2 (Declaration of Mark Tallarico) (describing steps taken to confirm the reasonableness of the underlying searches in response to FOIA administrative appeals filed by Plaintiff's founder). The affidavits explain how the designated employees searched for potentially responsive documents, including by contacting Corporation Finance staff, and substantiate why this approach was reasonably calculated to uncover such documents.

The Court disagrees with Plaintiff's unfounded assertion that the affidavits simply "parrot applicable legal standards," Opp. at 20. As Defendants point out, Plaintiff entirely fails to address the McInerney Declaration in its opposition. *Id*. Moreover, Plaintiff makes much of the fact that Mr. Tallarico "did not confirm the destruction of the unredacted exhibits by the Corporation Finance staff; rather, he merely took their word for it." *Id*. But Defendants are right that Plaintiff's preferred investigative project was not required for the searches conducted to be adequate. *See Lahr*, 569 F.3d at 990 ("As a general matter, an affidavit from an agency employee responsible for supervising a FOIA search is all that is needed to satisfy the personal knowledge requirement of Federal Rule of Civil Procedure 56(e)") (internal quotations and citation omitted); *Judicial Watch, Inc. v. U.S. Dept. of Housing and Urban Dev.*, 20 F. Supp. 3d 247, 254-55 (D.D.C. 2014) (explaining that "it is permissible for an agency to rely on subject matter experts to conduct individualized searches for documents when responding to FOIA requests"). Because the record here confirms that the agency has shown beyond material doubt that it conducted a search

---

[4] Plaintiff does not rebut Defendants' claim that it failed to exhaust administrative remedies as required for 83 FOIA requests, Opp. at 19. Defendants also note, without rebuttal, that to the extent Plaintiff alleged for the first time in the Second Amended Complaint that certain records were improperly withheld, Plaintiff failed to exhaust that claim either. *See* Mot. at 22; Opp. at 19-20 (failing to respond to this argument).

reasonably calculated to uncover all relevant documents, summary judgment is warranted.

### D. Plaintiff's Rule 56(d) Motion is Denied

In response to Defendants' Motion for Summary Judgment, Plaintiff contends that it has not had the opportunity to take sufficient discovery to oppose the motion. *See* R. 56(d) Mot. Plaintiff alleges that additional discovery would show at least two disputed material facts. *See id*. at 4. First, Plaintiff avers that additional discovery would show that Defendants destroyed documents on September 3, 2020 rather than October 15, 2020. *See id*. Second, Plaintiff contends that without additional discovery, it would have no way of knowing exactly what documents Defendants may have destroyed on September 3, 2020. *See id*. at 5. Plaintiff argues that the litigation hold itself would be superfluous if Defendants truly destroyed the documents it claims to have on September 3, 2020. *See id*.

"A party seeking relief under Rule 56(d) must show '(1) that they have set forth in affidavit form the specific facts that they hope to elicit from further discovery, (2) that the facts sought exist, and (3) that these sought-after facts are essential to resist the summary judgment motion.'" *Hernandez v. Costco Wholesale Corp.*, No. 21-CV-00686-HSG, 2022 WL 225624, at *1 (N.D. Cal. Jan. 26, 2022) (quoting *State of Cal., on Behalf of Cal. Dept. of Toxic Substances Control v. Campbell*, 138 F.3d 772, 780 (9th Cir. 1998)).

The underlying premise of Plaintiff's motion is that discovery is necessary so it can police whether the SEC is correctly applying its own document retention policies. *See* R. 56(d) Mot. at 4 (identifying "the central issue of this case" as "whether the SEC properly applied the Policy in allegedly destroying the unredacted exhibits [Plaintiff] requested"), 5 ("The SEC's document retention policies and judgment in relation to [litigation hold] policies is crucial to determining whether the SEC was complying with its own document retention policies, the veracity of the SEC's statements regarding document destruction, and whether the SEC acted arbitrarily and capriciously in applying those policies."). But Defendants are correct that it is well-established that the FRA creates no private right of action to enforce such policies. *See Kissinger v. Reps. Comm. for Freedom of the Press*, 445 U.S. 136, 149 (1980) ("The legislative history of the Acts reveals that their purpose was not to benefit private parties, but solely to benefit the agencies

themselves and the Federal Government as a whole"); *Armstrong*, 924 F.2d at 294 (explaining that the FRA "preclud[es] private litigants from suing directly to enjoin agency actions in contravention of agency guidelines," and finding that "[i]t would clearly contravene this system of administrative enforcement to authorize private litigants to invoke federal courts to prevent an agency official from improperly destroying or removing records"); *Competitive Enter. Inst. v. U.S. Env't Prot. Agency*, 67 F. Supp. 3d 23, 31 (D.D.C. 2014) (dismissing claim by private litigant challenging agency's records disposal decisions).

Accordingly, considering the Rule 56(d) motion within the legally accurate framing of the scope of Plaintiff's claims, the Court agrees with Defendants that the proposed discovery is not essential to oppose the summary judgment motion, especially in light of well-settled general principles that narrowly circumscribe discovery in APA and FOIA cases. First, Plaintiff has failed to show why discovery showing that certain documents were destroyed on September 3, 2020 rather than October 15, 2020 would create any genuine issue of material fact as to any of its claims. *See* Dkt. No. 63 ("Opp. to R. 56(d) Mot.") at 5-6. Second, Defendants' affidavits already set out the destruction dates of the records in question. *See id.* at 7-8. Third, Plaintiff fails to show why anything about the scope or execution of Defendants' litigation hold is material or essential (or even relevant) to the claims. *See id*. at 9-10. Ultimately, Plaintiff fails to show that any discovery is necessary or would change any of the conclusions the Court has already explained in finding summary judgment warranted as to all of its claims.[5]

//
//
//
//
//

---

[5] The Court also notes that other district courts have concluded that, absent a showing of bad faith, the appropriate remedy when an agency's declarations are deficient under FOIA is to "request that [the] agency supplement its supporting declarations rather than order discovery." *Frost*, 2018 WL 1626682 at * 10. Because the Court has found the agency's affidavits here adequate, it need not reach whether supplementation of those affidavits would be the proper next step as opposed to ordering discovery.

14

## IV. CONCLUSION

The Court **GRANTS** Defendants' Motion for Summary Judgment in its entirety, and **DENIES** Plaintiff's Rule 56(d) Motion. The Clerk is directed to enter judgment in favor of Defendants and to close the case.

**IT IS SO ORDERED.**

Dated:   January 11, 2023

                                        HAYWOOD S. GILLIAM, JR.
                                        United States District Judge